UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PANTERRA ENGINEERED PLASTICS, :
INC.,                         :
     **Plaintiff,**           :
                              :    **Case No. 3:05CV01447 (JBA)**
**v.**                        :
                              :
TRANSPORTATION SYS.           :
SOLUTIONS, LLC, ET AL.,       :
     **Defendants.**          :

## RULING ON DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, MOTION TO TRANSFER VENUE [DOC. #16/19]

In its Second Amended Complaint [Doc. #15], plaintiff claims misappropriation of trade secrets, breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), conspiracy, and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Defendants now move to dismiss this case for lack of personal jurisdiction and improper venue, or alternatively, to transfer it to the Middle District of North Carolina [Doc. #16/19].  For the reasons explained below, defendants' motion to dismiss and motion to transfer are DENIED.

## I. Background

Plaintiff Panterra Engineered Plastics, Inc. ("Panterra") is incorporated in Delaware with its principal place of business in Stamford, Connecticut.  Defendant Transportation System Solutions, LLC ("TSS"), f/k/a A.R. Haire, Inc., was incorporated in North Carolina and has its principal place of business in Guilford County, North Carolina.  The individual defendants A.R.

1

Haire, Darryl J. Heffline, and Larry Lansford are residents of
North Carolina.  Subject matter jurisdiction is based on federal
question and diversity jurisdiction, pursuant to 28 U.S.C. § 1331
and § 1332, respectively, and venue under 28 U.S.C. §§ 1391(b)
and (c).

Defendants argue that personal jurisdiction is not conferred
by the Connecticut long-arm statutes, Conn. Gen. Stats. § 33-
929(f) and § 52-59(b), and that even if such grounds existed,
"minimum contacts" satisfying due process requirements between
defendants and Connecticut are non-existent.  Defendants also
claim that this is an improper venue for the action.  Finally,
and in the alternative, defendants maintain that the Court should
transfer this case to the United States District Court for the
Middle District of North Carolina.

## II. Factual Allegations

The Complaint and plaintiff's record in opposition to
defendant's motion allege the following facts.  Sometime prior to
2002, Phelps Engineered Plastics, Inc. ("Phelps"), a Connecticut
corporation, developed and marketed a core-manufacturing process
for thermoplastic "honeycomb technology," a lightweight
structural material used in the transportation industry, for
instance, in place of wood for the sides and floors of large
trucks.  Millenium/A.R. Haire, Inc., a North Carolina
transportation company for whom Haire and Heffline were officers,

2

was one of Phelps's clients and approached Phelps and its founder Edwin Phelps around 2002 about a possible merger.  Around April 2003, Millenium/A.R. Haire, Inc. and Phelps were merged into Innovative Materials & Technology, Inc. ("IM&T"), with Danbury, Connecticut as its principal place of business.  Having acquired Phelps's assets, IM&T began marketing its PepCore line of honeycomb material.

Subsequently, defendants Haire and Heffline became officers in IM&T, but on September 29, 2003, IM&T was forced into involuntary bankruptcy in the District of Connecticut by Phelps. See In re Innovative Materials & Tech., Inc., No. 03-51300 (AHWS) (Bankr. D. Conn. 2004).  On October 22, 2003 Edwin Phelps and the Phelps corporations also brought an action in this District against Haire.  See Phelps et al. v. Haire, No. 03cv01825 (JBA). Haire did not contest personal jurisdiction in that case.  It is plaintiff's contention that during the time period of the bankruptcy proceedings (2003-2004) the individual defendants conspired to appropriate for themselves the IM&T honeycomb technology that plaintiff bought at the bankruptcy auction, instructing managers Luis Soto and Robert Dawson to download records and trade secrets in Danbury and ship them to North Carolina for use there.  After IM&T's bankruptcy proceeding commenced, Haire and Heffline allegedly left IM&T to reactivate A.R. Haire, Inc., using the stolen technology and trade secrets

to manufacture a product competitive with IM&T's PepCore line. Plaintiff also claims that around March 2004, Haire, Heffline, and Lansford began business discussions with Panterra's President Thomas J. St. Denis, and that Haire and Lansford came to Connecticut for meetings with St. Denis for this purpose.

Sometime in 2004, TSS became the successor-in-interest of A.R. Haire, Inc., incorporated in North Carolina. In summer 2004, TSS recruited from IM&T Soto and engineer Ralph Eighme, both of whom had extensive knowledge of IM&T technologies, and signed them to one-year contracts. At the July 8, 2004 bankruptcy auction of IM&T assets, Panterra (through its predecessor-in-interest Saugatuck Land Trust Co.) outbid TSS to acquire all of IM&T's intellectual property ("IP"), including patents, utility models, inventions, trade secrets, confidential business information, copyrightable works, industrial designs, trademarks, rights in computer data files and web addresses, rights in license agreements, and the right to enforce confidentiality and nondisclosure, of which it assumed ownership on August 4, 2004. (See "IP Assignment" & "Schedule A," Pl. Ex. A.) Plaintiff also obtained the "right to sue and recover for, and the right to profits or damages due or accrued arising out of or in connection with, any and all past, present and future infringements or dilution of or damage or injury to the Intellectual Property." ("IP Assignment," Pl. Ex. A.)

4

A.R. Haire, Inc./TSS purchased some of IM&T's production equipment, including three core-forming machines, and by bankruptcy court order retrieved certain parts for this equipment from a repairer in Connecticut.  On July 20, 2004, Panterra wrote to A.R. Haire, Inc., Soto, and Eighme, demanding return of the allegedly purloined IP and threatening suit.  A.R. Haire, Inc. filed suit against St. Denis in North Carolina on July 30, 2004, which was later dismissed.  See A.R. Haire, Inc. v. St. Denis, 625 S.E.2d 894 (N.C. Ct. App. 2006) (reversing decision of Superior Court and dismissing for lack of personal jurisdiction).

**II. Discussion**

    **A. Personal jurisdiction**

        **1. Legal standard**

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  However, as with any motion to dismiss, "[w]e construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (internal citations omitted).  At the time this Motion was filed, the parties had only just commenced discovery, which is not yet completed.  See Order [Doc. #38].  "Where plaintiff has engaged

in jurisdictional discovery, but no evidentiary hearing [has
been] conducted, 'the plaintiff's prima facie showing, necessary
to defeat a jurisdiction testing motion, must include an averment
of facts that, if credited . . . would suffice to establish
jurisdiction over the defendant.'" Tex. Int'l Magnetics, Inc. v.
Auriga-Aurex, Inc., 334 F.3d 204, 206 (2d Cir. 2003) (citing Ball
v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.
1990)); see also Tomra of N. Amer., Inc. v. Envtl. Prods. Corp.,
4 F. Supp. 2d 90, 91-92 (D. Conn. 1998) and cited cases.  The
same standard is applicable to review of venue.  See Gulf Ins.
Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).

Since this is a federal question case[1] involving foreign
defendants, the Court first looks to the federal statute to see
whether it provides for national service of process.  See PDK
Labs., Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).
Because the Lanham Act, 15 U.S.C. § 1114 et seq., does not so
provide, the Court applies Connecticut's long-arm statutes to
determine whether sufficient basis exists for exercising personal
jurisdiction over the defendants.  See Sunward Elecs., Inc. v.
McDonald, 362 F.3d 17, 22 (2d Cir. 2004); Girl Scouts of the
United States v. Steir, 102 Fed. Appx. 217, 219 (2d Cir. 2004).

---

[1] Both parties consider this to be a diversity case.
Although both diversity and federal question jurisdiction are
alleged, the Court treats the case as one of federal question
jurisdiction.  This difference does not affect the outcome of the
personal jurisdiction analysis.

"If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process," <u>Savin v. Ranier</u>, 898 F. 2d 304, 306 (2d Cir. 1990) (internal citation omitted), which is derived from the Fifth Amendment in federal question cases, <u>see</u> <u>Broadcast Marketing Int'l, Ltd. v. Prosource Sales & Marketing, Inc.</u>, 345 F. Supp. 2d 1053, 1060 n.6 (D. Conn. 2004).

The due process analysis has two steps: minimum contacts and reasonableness.  The "minimum contacts" analysis, <u>see</u> <u>World Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980), differentiates between specific and general jurisdiction. "Specific jurisdiction exists where the suit arises from the defendant's contacts with the forum. . . . Unlike general jurisdiction, where the plaintiff has a more stringent burden of proving 'continuous and systematic contacts' with the forum, no such burden is required in cases of specific jurisdiction." <u>Broadcast Marketing</u>, 345 F. Supp. 2d at 1060 n.7.  The "reasonableness" analysis considers:

> 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies.

<u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. 1996) (citing <u>Asahi Metal Indus. Co. v. Super. Ct. Cal.</u>,

480 U.S. 102, 113-14 (1987)).

### a. Long-arm jurisdiction over TSS

Plaintiff claims subsections (3) and (4) of the Connecticut long-arm statute as conferring long-arm jurisdiction over defendant TSS, which cover a defendant's: (3) "production, manufacture or distribution of goods . . . with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed," and (4) "tortious conduct in this state." <u>See</u> Conn. Gen. Stat. § 33-929(f)(3), (4). (<u>See</u> Pl. Opp. Mem. [Doc. #24] at 18-20.)[2]

According to plaintiff, "TSS is using the IP to manufacture a honeycomb thermoplastic core product that infringes on

────────────

[2] The statute reads in pertinent part:

    (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

Panterra's IP" and "the product is being used in Connecticut by
TSS' customers," falling under subsection (3).  (Pl. Opp. Mem. at
19.)  Plaintiff further argues that, because TSS advertises "on
it[s] website to have sold its product to moving companies and
trailer companies, which, in turn, market their products
throughout the United States," the company must expect that the
product would enter Connecticut.  (See id. at 19-20.)[3]  Plaintiff
also claims that "[t]he core TSS sold to Advanced Trailer
Concepts [ ] was used by Advanced Trailer Concepts to construct
trailer pods used for hauling cargo behind automobiles.  Advanced
Trailer Concepts is bringing one of its trailers containing the
core manufactured and sold by TSS to Greenwich, Connecticut on

---

[3] The existence of web-based advertising is not dispositive
of long-arm jurisdiction and is listed here only as one of
several factors cited by plaintiff in arguing that defendant TSS
could have expected its products to be used in Connecticut.  From
the print-outs of the TSS website preferred by plaintiff (see Pl.
Ex. G), it appears that the site is "passive," requiring "a
potential customer to initiate contact with [the company] by
telephone, mail, or email," without being able to "directly
purchase any product through the web site," Amer. Wholesalers
Underwriting, Ltd. v. Amer. Wholesale Ins. Group, Inc., 312 F.
Supp. 2d 247, 254-55 (D. Conn. 2004) (holding that "passive"
websites cannot ground a finding of personal jurisdiction).  See
also Broadcast Marketing Int'l, Ltd. v. Prosource Sales &
Marketing, Inc., 345 F. Supp. 2d 1053, 1060-61 (D. Conn. 2004);
Bell v. Shah, 2006 U.S. Dist. LEXIS 14919, at *10 (D. Conn. Mar.
31, 2006) (citing On-Line Techs. v. Perkin Elmer Corp., 141 F.
Supp. 2d 246, 265 (D. Conn. 2001); Millennium Enters., Inc. v.
Millennium Music, LP, 33 F. Supp. 2d 907, 915 (D. Or. 1999) ("The
trend has shifted away from finding jurisdiction based solely on
the existence of Web site advertising. Instead, something more is
required to show that the defendant purposefully directed its
activities at the forum.") (internal quotation marks omitted).

May 4, 2006." (St. Denis Aff. ¶ 22.) The basis for this affiant's knowledge is unknown. Under subsection (4), plaintiff argues that "[t]hrough its agents, Haire, Heffline, and/or Lansford, TSS came to Connecticut to wrongfully recruit Eighmie and Soto for the purpose of misappropriating the IP," and that the tort of trade secret misappropriation therefore occurred in this state. (See Pl. Opp. Mem. at 18-19.)

Based on its pleadings and affidavits, plaintiff has made a prima facie showing that the Court has personal jurisdiction over defendant TSS under subsection (4). While plaintiff's arguments under subsection (3) based on the TSS website and the unexplained knowledge of a customer's scheduled foray into Connecticut are frail, plaintiff alleges sufficient facts at this stage to support its allegations that defendant TSS committed torts in this forum. Plaintiff's theory is that, in an extensive scheme to purloin IM&T's IP, TSS/A.R. Haire, Inc. visited the state a number of times in connection with the Connecticut bankruptcy auction of IM&T, recruited IM&T employees knowledgeable in the honeycomb technology, and downloaded IM&T's IP from computers in Connecticut, thereby committing tortious conduct within Connecticut. (See St. Denis Aff. ¶¶ 17, 21, 29; Karamanis Aff. ¶¶ 5-7, 9.) Because TSS's contacts with Connecticut pertain to the subject of this lawsuit, these alleged facts also support a finding of minimum contacts to satisfy the first step of the due

process analysis.

Looking to the five-factor <u>Asahi</u> test for reasonableness, <u>see</u> <u>supra</u> at 7, under the first factor, while the Court's exercise of jurisdiction will geographically inconvenience and thereby burden the defendant somewhat, the distance and travel logistics are not great and are the mirror image of the burden on plaintiff of the converse, a consideration reflected in the third factor: plaintiff's interest in obtaining convenient, effective relief in this forum, where Panterra is located and elected to litigate.  In terms of the second factor, because plaintiff is a Connecticut citizen and the IP at issue was developed here, the state has an interest in insuring convenient, affordable access to a judicial forum for relief from alleged wrongs here by non-residents.  The fourth factor, efficient resolution of the case, generally depends on the location of witnesses and evidence.  <u>See</u> <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 245 (2d Cir. 1999) (citing <u>Metro. Life</u>, 84 F.3d at 574).  Although defendant, its employees and property, including the core-forming machines purchased at the IM&T auction, are located in North Carolina, plaintiff and the IP, non-party witnesses such as Eighmie, and the manufacturer of the core-forming machines — whose testimony may bear on what the core-forming machines produce that implicates use of the IP — are in this state.  (<u>See</u> St. Denis Aff. ¶ 29).  Given this distribution under the fourth factor, it

appears more efficient to litigate this controversy where non-party witnesses are within subpoena power for live testimony at trial.  Factor five, the interest in furthering substantive social policies, is not implicated here.  Thus, on balance, this Court's exercise of jurisdiction over TSS would not be substantially unfair or unreasonable.

### b. Personal jurisdiction over Haire, Heffline, and Lansford

As to the individual defendants, plaintiff claims that subsections (1), (2), and (3)(B) are applicable:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent . . . (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

Conn. Gen. Stat. § 52-59b(a).  Defendants reject all grounds of personal jurisdiction in section 52-59b(a), and alternately advance the theory that, even if Haire, Heffline, and Lansford's actions were to bring them arguendo within Connecticut's long-arm jurisdiction, they were merely acting in their capacity as

12

corporate officers for TSS and cannot therefore be subject to
personal jurisdiction under the "fiduciary shield" doctrine,
relying, <u>inter alia</u>, on <u>Adams v. Wex</u>, 56 F. Supp. 2d 227 (D.
Conn. 1999) ("[P]ersonal jurisdiction may not be asserted over
the president of a corporation based on the president's
transaction of business in Connecticut where the president did
not transact any business other than through the corporation.").
(<u>See</u> Def. Mem. at 20.)

   In support of this Court's exercise of jurisdiction,
plaintiff claims under subsections (1) and (2) that Haire and
Heffline misappropriated the IP while managing IM&T in
Connecticut in 2002 (Pl. Opp. Mem. at 13; St. Denis Aff. ¶ 13)),
that all individual defendants recruited Soto and Eighmie in
Connecticut (<u>id.</u>), that defendants had meetings in Connecticut
with Panterra's St. Denis (<u>see</u> Denis Aff. ¶¶ 15, 16) related to
the honeycomb technology, and that Haire never contested the
Court's personal jurisdiction over him when he was sued by Phelps
(Pl. Opp. Mem. at 7) on claims tangentially related to this
technology.  Plaintiff also claims that these defendants, while
not physically present in Connecticut, engaged in tortious
conduct by telephone and mail[4] (<u>see</u> Pl. Opp. Mem. at 14), and

--------

   [4] This alone would probably be insufficient.  <u>See</u>, <u>e.g.</u>,
<u>Rosenblit v. Danaher</u>, 206 Conn. 125, 140-41 (1988) (no personal
jurisdiction over Massachusetts attorney hired by two Connecticut
residents and one Massachusetts resident to pursue lawsuit that
"arose out of a series of contacts by the plaintiffs with

that Haire and Heffline directed employees of IM&T to ship

purloined IP from Connecticut to North Carolina (see Karamanis

Aff. [Doc. #27] ¶ 7).  Under subsection (3), plaintiff argues

that the losses resulting from defendants' alleged torts were

felt in the state, as Panterra's headquarters are in Stamford,

Connecticut.  (See Pl. Opp. Mem. at 14.)

The plaintiff's allegations collectively, if proved, would

demonstrate the Court's long-arm jurisdiction over defendants

---

Massachusetts residents in the main [and] out of the plaintiffs'
efforts to rehabilitate real property situated in Massachusetts
[and] also involved a number of the potential witnesses from
Massachusetts," notwithstanding that a key player in the dispute
was a Connecticut resident, some witnesses resided in
Connecticut, and defendant was present in Connecticut on one
occasion); Fielder v. First City Nat'l Bank of Houston, 807 F.2d
315, 317 (2d Cir. 1986) (personal jurisdiction under New York
long-arm statute, which is virtually identical to Connecticut's,
not established where defendants made two or three telephone
calls and one mailing to Connecticut); Rasmussen v. Scinto,
06CV99 (MRK), 2006 WL 2567862, at *3 (D. Conn. Sept. 5, 2006)
("The transmission of communications between an out-of-state
defendant and a [party] within the jurisdiction does not, by
itself, constitute the transaction of business in the forum
state."); Irwin v. Mahnke, 05cv976 (AHN), 2006 WL 691993, at *3-4
(D. Conn. Mar. 16, 2006) (no transaction of business in
Connecticut even though defendant was admitted pro hac vice in
District of Connecticut); Baker v. Abrams, 929 F. Supp. 617, 620
(D. Conn. 1996) (defendant Maine attorneys did not transact
business in Connecticut where their firm was not involved in any
contract with the plaintiff in Connecticut, agreement of one
defendant with a Connecticut attorney was made by mail, and there
was no indication that any of the defendants solicited business
in Connecticut); Greene v. Sha-Na-Na, 637 F. Supp. 591, 596 (D.
Conn. 1986) ("[T]he individual defendants' October 15, 1984
telephone call, October 16, 1984 telegram, and October 22, 1984
letter, all directed to the plaintiff in Connecticut, are
insufficient to constitute the transacting of business in
Connecticut.").

Haire, Heffline, and Lansford, at least under subsection (2), the commission of a tort within the state.  The Court concludes that the "fiduciary shield" doctrine does not bar the assertion of long-arm jurisdiction over these individual defendants, where jurisdiction exists over TSS, largely for the same reasons laid out in Judge Jon C. Blue's thoughtful analysis of the issue in Under Par Associates., L.L.C. v. Wash Depot A., Inc., et al., 793 A.2d 300 (Conn. Super. Ct. 2001).  "[T]he 'fiduciary shield' doctrine finds no place in the text or underlying policy of § 52-59b," id., 793 A.2d at 305; accord Univ. of Bridgeport v. Maxus Leasing Group, Inc. et al., No. CV054009423S, 2006 Conn. Super. LEXIS 1847 (Conn. Super. Ct. June 15, 2006), having originally been a doctrine "initially considered to be a substantive requirement of New York law," which has now been rejected by the New York Court of Appeals, id. at 304, and now merely stands for the "common, unremarkable proposition" that "[w]here a corporation has not 'transacted business' in Connecticut and an officer of that corporation has not transacted any business other than through the corporation, the court has no more jurisdiction over the individual than it does over the corporation," id. at 303.  Defendants cite two cases from this district, Adams, 56 F. Supp. 2d 227, and Milne v. Catuogno Court Reporting Services, 239 F. Supp. 2d 195 (D. Conn. 2002), which have applied the fiduciary shield doctrine.  See also Bross Utilities Service Corp. v.

15

Aboushait, 489 F. Supp. 1366 (D. Conn. 1980); Hagar v. Zaidman, 797 F. Supp. 132 (D. Conn. 1992).  However, in the more recently decided Grunberger Jewelers v. Leone, No. 03cv647, 2004 U.S. Dist. LEXIS 11268 (D. Conn. June 18, 2004), it was determined that "the 'fiduciary shield doctrine' has not been adopted by the Connecticut [s]tate [c]ourts and there is a considerable question as to its justification," and "individuals should not be shielded from their own conduct simply because they were acting on behalf of a corporation or other entity." id. at *8-12; accord Vertrue Inc. v. Meshkin, 429 F. Supp. 2d 479 (D. Conn. 2006).

Defendants maintain that the individual defendants do not have any meaningful contacts with the forum state and that asserting jurisdiction over them would therefore violate the principles of fair play and substantial justice.  (See Def. Mem. at 23.)  The Court considers defendants' position under the specific jurisdiction rubric, as plaintiff shows no "systematic" or "continuous" contact with Connecticut by the individual defendants.  Crediting plaintiff's allegations that Haire, Heffline, and Lansford "conspired together to misappropriate the IP" (St. Denis Aff. ¶ 21), which scheme included their activities related to the IM&T bankruptcy auction in Connecticut and purchase of equipment for allegedly infringing on the honeycomb core manufacture, and Haire and Lansford's meetings with St. Denis to discuss business propositions relating to the IP (id. ¶

15), it is apparent that defendants "purposefully avail[ed]" themselves of opportunities and proceedings in Connecticut such that they could reasonably anticipate being haled into a Connecticut court in connection with their activities.  <u>See</u> <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  Thus, plaintiff has met its burden at this stage.  The Court's exercise of personal jurisdiction over the individual defendants does not offend due process for the same reasons set out under the <u>Asahi</u> analysis with respect to TSS.

**B. Venue**

As this case is based on federal question jurisdiction, 28 U.S.C. § 1391(b) is relevant to the analysis of venue.  It reads:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, . . . .

28 U.S.C. § 1391(b).  Defendant contends that venue in this district is improper because all defendants, the core-formers, and "all the events and actions allegedly giving rise to plaintiff's claims occurred or are occurring in North Carolina." (<u>See</u> Def. Mem. at 26-27.)  To demonstrate the propriety of its choice of venue under subsection (2),[5] plaintiff lists

----

[5] Because the parties argue in terms of diversity jurisdiction, they rely on 28 U.S.C. § 1391(a)(2) and (3) instead of § 1391(b).  The analysis under (a)(2) and (b)(2) is identical.

defendants' 2003 "misappropriation of the IP," "the recruitment and hiring of Eighmie and Soto," and the "IM&T bankruptcy auction in 2004" as events "giving rise to the claim" that occurred in Connecticut.  (See Pl. Opp. Mem. at 25.)

The Court need not determine the best venue, see Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992); it need only decide whether plaintiff has alleged facts showing that "'a substantial part' of the underlying events took place" in this district.  See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) ("[S]ignificant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 433 (2d Cir. 2005).  Here, although TSS and the individual defendants are now located in North Carolina and manufacture their products there, a number of significant events occurred in Connecticut: the alleged scheme for stealing the IP, of which TSS's purchase of the machines at the IM&T bankruptcy auction and luring essential IM&T employees were a part, was hatched in Connecticut.  This is sufficient for proper venue to lie in this

18

district.

## C. Transfer

It is well established that "a plaintiff's choice of forum is presumptively entitled to substantial deference," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gross v. BBC, 386 F.3d 224, 230 (2d Cir. 2004) (internal citations omitted).  The following factors bear on the decision whether to transfer:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

D.H. Blair & Co. v. Gottdiener, 2006 U.S. App. LEXIS 22652, at *22 (2d Cir. Sept. 5, 2006) (citing Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)); Church v. Lancaster Hotel Ltd. P'ship., 425 F. Supp. 2d 258, 259 (D. Conn. 2006).[6]

"In a motion to transfer pursuant to 28 U.S.C. § 1404(a),

---

[6] Plaintiff Panterra incorrectly assumes that the determination that North Carolina courts lacked jurisdiction over it as a defendant precludes this action from being transferred to the Middle District of North Carolina under 28 U.S.C. § 1404(a). The Middle District of North Carolina would undoubtedly have personal jurisdiction over TSS and the individual defendants in this case, all of whom are citizens of North Carolina.

the defendant has the burden of presenting a strong case for transfer." Argent Funds Group, LLC v. Schutt, No. 3:05cv01456 (SRU), 2006 U.S. Dist. LEXIS 60469, at *7 (D. Conn. 2006) (citing Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950)); see also Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908 (1979). Also, "[i]n a motion to transfer, a court does not seek merely to transfer inconvenience from one party to the other." Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc., 821 F. Supp. 848, 850 (D. Conn. 1983). Under the above D.H. Blair factors, defendants have not shown that the balance of factors tips strongly in favor of transfer. Most significantly, Panterra's choice of forum "is entitled to substantial deference," see Church, 425 F. Supp. 2d at 261; DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 27 (2d Cir. 2002). While the location of the parties, their records and property is split between North Carolina and Connecticut, the bankruptcy court records and trustee, non-party witnesses including Eighmie, and the manufacturer of the core-forming machines (see St. Denis Aff. ¶ 29) are only in Connecticut, slightly tipping factors two and three in favor of this forum. The fourth factor, convenience of the parties, lies in equipoise. Fifth, many of the operative facts underlying plaintiff's claims arise from alleged conduct in this district, as discussed earlier. As to factors six and seven, defendants have not

20

demonstrated that there are out-of-state witnesses unwilling to testify here, or that defendants' resources are substantially lacking so as to impair their ability to litigate in Connecticut in comparison to plaintiff's ability to do so in North Carolina. Thus, defendants have failed to meet their "heavy burden on this motion," <u>see</u> <u>Church</u> 425 F. Supp. 2d at 261, and transfer will therefore be denied.

## III. Conclusion

Accordingly, the Court DENIES defendant's Motion to Dismiss, or Alternatively, Motion to Transfer [Doc. #16/19].


IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.


**Dated at New Haven, Connecticut, this 12th day of October, 2006.**

21