UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PANTERRA ENGINEERED PLASTICS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-01447 (VLB) |
| TRANSPORTATION SYSTEM SOLUTIONS, LLC, ET AL. | : | |
| Defendants. | : | March 27, 2008 |

## MEMORANDUM OF DECISION DENYING MOTIONS FOR SUMMARY JUDGMENT [Docs. #53, 72]

The plaintiff, Panterra Engineered Plastics, Inc. ("Panterra"), filed this action against the defendants, Transportation System Solutions, LLC ("TSS"), and three of its officers and employees, A.R. Haire, Darryl J. Heffline, and Larry Lansford. Panterra has filed a motion for summary judgment [Doc. #53] as to five of the eleven counts of its third amended complaint [Doc. #49]. The defendants have filed a motion for summary judgment [Doc. #72] as to all eleven counts of that complaint. For the reasons given below, the motions are DENIED.

The following facts are relevant to the parties' motions for summary judgment. Panterra is a Delaware corporation with a principal place of business in Connecticut. TSS is a North Carolina limited liability company with a principal place of business in that state. Panterra and TSS compete in the development and marketing of structural materials that are used in assembling vehicles such as trucks and trains. The structural materials are known as honeycomb

composite panels. Panterra's panels are sold under the trademark PepCore, while TSS's panels are sold under the trademark Core-Tough.

Panterra purchased intellectual property regarding the honeycomb composite panels at the bankruptcy auction of Innovative Materials & Technology, Inc. ("IMT"), on July 8, 2004. Panterra describes the intellectual property as consisting of one patent; several trademarks; a website domain name; patent applications and rights to certain inventions and discoveries; trade secrets and confidential business information, including manufacturing processes, product specifications, customer lists, and business and marketing plans; copyrightable works; data files and media storage; and rights under license agreements. [Doc. #55, pp. 12-13] Panterra describes the trade secrets as including but not limited to "core-forming and panel lamination-forming manufacturing processes and procedures, materials and product specifications, optimal orientation of plastic materials, optimum heating and cooling temperatures, optimal pull speeds, optimal dwell time, optimal control pressures, squeeze and displacement parameters, optimum elongation, drying techniques, lamination techniques, optimal release agents and adhesive materials, optimal heat and cooling transfer fluids, engineering specifications and test data." [Doc. #55, p. 2]

TSS purchased most of IMT's physical assets at that same auction, including certain equipment used to manufacture honeycomb composite panels. According to the affidavit of Edwin Phelps, who was the owner of IMT's

predecessor company and extensively worked on the development of honeycomb composite panels, one could not use the equipment to produce quality panels unless one also had all of the know-how that Panterra describes as the trade secrets that it purchased at the auction along with the rest of IMT's intellectual property. [Doc. #55, p. 4] Haire and Heffline, who are presently officers and employees of TSS, previously were officers and employees of IMT and had full access to IMT's intellectual property, including the alleged trade secrets, when they worked there. Panterra alleges that shortly after it purchased IMT's intellectual property, it learned that Haire and Heffline planned to use their knowledge of the intellectual property in order to benefit TSS. Panterra also alleges that Haire and Heffline copied IMT's computer records regarding the intellectual property and sent them to TSS. Although Panterra demanded that TSS cease and desist, TSS decided to introduce its Core-Tough product to compete with Panterra's PepCore less than one year after the auction.

Panterra's third amended complaint states the following causes of action: misappropriation of trade secrets in violation of the Connecticut Uniform Trade Secrets Act (CUTSA), Conn. Gen. Stat. § 35-51 et seq., as to all defendants (count one); breach of fiduciary duty, as to Haire and Heffline (count two); aiding and abetting breach of fiduciary duty, as to TSS and Lansford (count three); violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42a-110a et seq., as to all defendants (count four); civil conspiracy, as to all defendants (count five); deceptive advertising in violation of § 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), as to TSS (count six); conversion, as to all defendants (count eight); civil theft pursuant to Conn. Gen. Stat. § 52-564, as to all defendants (count nine); and tortious interference with business relations, as to all defendants (count ten). Panterra also seeks a declaratory judgment that certain patents acquired by Haire are invalid (count seven) and an accounting from TSS (count eleven). The defendants move for summary judgment as to all of Panterra's claims. Panterra moves for summary judgment as to misappropriation of trade secrets (count one), violation of CUTPA (count four), conversion (count eight), civil theft (count nine), and tortious interference with business relations (count ten).

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

As to Panterra's CUTSA, CUTPA, and Lanham Act claims (counts one, four, and six), the defendants argue that the intellectual property acquired by Panterra from IMT did not include any trade secrets pursuant to Conn. Gen. Stat. § 35-51(d). Under that statute, a trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." The defendants contend that the alleged trade secrets were generally known and were not the subject of reasonable efforts to maintain secrecy. In the defendants' view, the failure of any of Panterra's intellectual property to satisfy the definition of trade secrets necessarily means that the defendants also could not have committed an unfair trade practice or deceptively advertised their Core-Tough panels to compete with

5

Panterra's PepCore panels.

"The question of whether information sought to be protected by [CUTSA] rises to the level of a trade secret is one of fact . . . ."  Elm City Cheese Co., Inc. v. Federico, 251 Conn. 59, 68 (1999).  "Both the existence of a trade secret and its misappropriation are questions of fact on which Plaintiff has the burden of proof."  Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC, 80 F. Supp. 2d 25, 33 (N.D.N.Y. 1999) (citing, inter alia, A.F.A. Tours, Inc., v. Whitchurch, 937 F.2d 82, 89 (2d Cir. 1991) ("existence of a trade secret is a question of fact for the determination of the trier of fact . . . .")).

On the one hand, the affidavit of Phelps weighs in favor of a finding that Panterra possessed trade secrets.  On the other hand, the defendants have offered evidence that weighs against that finding, namely certain defendants' confidential deposition testimony regarding their development of the Core-Tough product.  The Court previously permitted the parties to file confidential materials under seal, and, therefore, the content of those materials will not be discussed in this opinion.  See Docs. #76, 79, 87, 98, 101.  Faced with such competing evidence, the jury could reasonably resolve the issue of trade secret misappropriation in favor of either side.  "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment."  McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006).  Summary judgment is accordingly not appropriate as to the issue of whether Panterra had trade secrets and whether TSS misappropriated them.

Summary judgment is also not warranted as to the CUTPA and Lanham Act claims because they are closely tied to the resolution of the CUTSA claim. If Panterra succeeds in proving that it possessed trade secrets and that TSS misappropriated them by developing and marketing the Core-Tough panels, Panterra may also be able to prove that TSS deceptively advertised Core-Tough in violation of the Lanham Act and that Panterra has suffered an injury pursuant to CUTPA.

As to the remaining common law claims of breach of fiduciary duty, civil conspiracy, conversion, civil theft, and tortious interference with business relations (counts two, three, five, eight, nine, and ten), the defendants argue that those claims are preempted by CUTSA pursuant to Conn. Gen. Stat. § 35-57. The Court does not need to decide the preemption issue because there are genuine issues of material fact regarding Panterra's assertion that it possessed trade secrets and that the defendants misappropriated them. If Panterra fails to prove its assertion, thereby failing to prove a violation of CUTSA, Panterra may then seek relief pursuant to its common law causes of action.

The parties' motions for summary judgment [Docs. #53, 72] are DENIED.

        IT IS SO ORDERED.

        /s/
        Vanessa L. Bryant
        United States District Judge

Dated at Hartford, Connecticut: March 27, 2008.